### State of Connecticut *v.* Leroy Dukes
### (11147)

Daly, O'Connell and Heiman, Js.

Argued September 14—decision released November 3, 1992

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Reidy,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).[1] The defendant claims that the trial court improperly (1) held that the rape shield law, General Statutes § 54-86f, did not prohibit the state from introducing into evidence a statement made by the victim to her treating physician as to her lack of prior sexual relations,[2] (2) found that the probative value of the statement made by the victim to her treating physician concerning her lack of prior sexual experience outweighed the possible prejudicial effect on the defendant, and (3) permitted the state to substitute the crime of sexual assault in the fourth degree for a charge of sexual assault in the first degree after granting a judgment of acquittal as to the more serious offense, thereby violating the defendant's due process rights. We affirm the trial court's judgment.

The following evidence was available for the consideration of the jury, some of which was apparently rejected

---

[1] General Statutes § 53a-73a (a) (2) provides: "A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ."

[2] This claim was expressly withdrawn by the defendant at the time of oral argument.

by it in light of its verdict. The victim, the sister of the defendant's wife, often baby-sat for her sister's three children when both the defendant and his wife were working. The defendant's wife worked at a health care facility from 11 p.m. to 7 a.m. The defendant was employed by a New Haven newspaper, and usually began work at approximately 3 a.m. When she baby-sat, the victim stayed the night at the apartment occupied by the defendant, his wife and his wife's children. She slept on a couch in the living room that folded out into a bed.

On November 6, 1989, at about 10:40 p.m., the defendant picked up the victim at her Hamden residence and brought her to his New Haven residence to care for his wife's children. The defendant left the residence to take his wife to work. While he was away, the victim opened the couch. She fell asleep wearing a housedress, a skirt, underpants and stockings. Her sister's three year old daughter slept with her on the couch.

At about 11:30 p.m., the victim awoke and observed the defendant, clad only in undershorts standing in the living room. She turned away from him. He then got into bed with the victim and the child. The defendant fondled the victim's breasts and thighs, and touched her vaginal area with his fingers and inserted his fingers into her vagina through her underpants. He kept telling the victim that he wanted to make a woman out of her. The victim repeatedly told the defendant to stop, but he refused. The child remained on the couch during the incident. The victim subsequently left the couch to take the child to the bathroom, telling the defendant that he should be gone when she returned. When she returned from the bathroom with the child, the defendant had gone into his bedroom. The victim was afraid to call anyone for fear that the defendant might hear her and beat her.

The defendant fell asleep in his bedroom and the victim fell asleep on the couch. At about 4 a.m., the victim awoke and heard the defendant snoring and realized that he had not left for work. She got up from the couch and knocked on the bedroom door to awaken the defendant. The defendant indicated that he did not have to work that day. He also told the victim that he wanted to apologize for his earlier actions. The victim told the defendant that any apology would have to be made in his wife's presence. He replied that it was his house and he could do what he wanted.

The defendant then grabbed the victim and pulled her onto his bed. The victim was still fully clothed. The defendant pulled up the victim's dress and touched her breasts with his mouth. He repeatedly told the victim that he wanted to make a woman out of her. The victim asked the defendant to stop. He refused. The defendant removed the victim's underpants and, after fondling her breasts, buttocks and vaginal area, penetrated her vagina with his fingers and his penis. The victim tried to push the defendant off of her, but was unable to do so.

After the incident, the defendant remained in the bedroom and the victim returned to the couch. She did not call anyone because she continued to fear what the defendant might do if he heard her.

At about 7 a.m., the victim arose and prepared the children for school. When her sister returned, the victim did not tell her what had occurred, fearing that her sister would not believe her. When she returned to the Hamden residence, which she shared with her grandmother, the victim did tell her grandmother about the incidents, and her grandmother called the police.

A New Haven police officer took the victim's statement and transported her and her grandmother to Yale-New Haven Hospital. At the hospital, the victim

told Craig Newton, a social worker, and Witler Christensen, a detective from the New Haven police department, that she had been sexually assaulted by the defendant.

Patricia Rodrigues, a resident physician in obstetrics and gynecology, examined the victim. Prior to the physical examination, Rodrigues took a medical history from the victim who related that she suffered from sickle cell disease and irregular menstrual periods. She also told Rodrigues that she had never been sexually active prior to the assaults on her. The physical examination of the victim revealed that the hymenal ring had been disrupted and the vaginal cavity contained nonmotile sperm.

Prior to his arrest by the New Haven police, the defendant gave a statement to Christensen in which he admitted that he had engaged in two sexual encounters with the victim. He claimed, however, that the encounters had both been consensual.

The defendant was charged in a four count information stemming from the two alleged sexual assaults occurring at 11:30 p.m. and 4 a.m.[3] At the completion of the state's evidence, the defendant moved for a judgment of acquittal on each of the four counts of the information. The trial court heard argument, and, without objection on the part of the defendant, permitted the state to file an amended information charging the defendant with the crime of sexual assault in the fourth degree,[4] after first indicating its belief that the state

---

[3] The original information charged the defendant in count one with sexual assault in the first degree arising out of the 11:30 p.m. incident, count two with sexual assault in the first degree arising out of the 4 a.m. incident, count three with unlawful restraint in the first degree arising out of the 11:30 p.m. incident and count four with unlawful restraint in the first degree arising out of the 4 a.m. incident.

[4] Amended information count three.

had failed to produce sufficient evidence to permit submitting the original first count charge of sexual assault in the first degree to the jury. The trial court also rendered a judgment of acquittal on the third count of the original information charging unlawful restraint arising out of the first claimed assault. The trial court permitted the count of sexual assault in the first degree that alleged a sexual assault occurring at about 4 a.m. to be submitted to the jury[5] and, at the request of the defendant, charged the jury that sexual assault in the fourth degree was a lesser included offense thereof.[6] The trial court also submitted to the jury a single count of unlawful restraint in the first degree arising out of the sexual assault that was alleged to have occurred at about 4 a.m.[7]

The jury found the defendant not guilty of sexual assault in the first degree but guilty of the lesser included offense of sexual assault in the fourth degree. The jury also found the defendant guilty of sexual assault in the fourth degree on the basis of the actions that were alleged to have occurred at about 11:30 p.m. on November 6, 1989. The jury found the defendant not guilty of the crime of unlawful restraint in the first degree.

The trial court sentenced the defendant to a term of one year on the first conviction of sexual assault in the fourth degree and to a period of six months on the second conviction, to run consecutively. This appeal followed.

I

The defendant claims that the trial court improperly permitted into evidence a statement made by the vic-

---

[5] Amended information count one.

[6] The issue of whether General Statutes § 53a-73a (2) is a lesser included offense of § 53a-70 (a) has not been raised by the defendant, and, therefore, is not before us in this case.

[7] Amended information count two.

tim to the examining physician at the hospital as to her lack of sexual activity prior to the sexual assaults on her by the defendant. He claims that the trial court incorrectly found that the probative value of the evidence outweighed its prejudicial nature. We do not agree.

Prior to admitting the evidence, the trial court held a hearing in the absence of the jury to determine what the testimony would be. After that hearing, the trial court indicated that it would admit the testimony and would give the jury an instruction limiting its use of the testimony. The trial court made its ruling on the basis of its determination that it would balance any potential prejudice to the defendant by its limiting instruction.[8]

Rodrigues, in the presence of the jury, testified that the victim stated that she had never been sexually active until this event. The subject matter of this answer was in the medical history that the physician had obtained from the victim at the time of her examination. The defendant took exception.

When objecting to evidence, counsel must succinctly reveal the basis of the objection. *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971); *Casalo* v. *Claro,* 147 Conn. 625, 628–29, 165 A.2d 153 (1960); *State* v. *Manluccia,* 2 Conn. App. 333, 341–42, 478 A.2d 1035, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984). Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such

---

[8] In its ruling, the trial court stated: "And I'm doing that [admitting the testimony and giving a limiting instruction] in terms of what is prejudicial and what's not. So, I think that's the best way I can balance the rights of everybody here, and that's what I'm going to do. Okay."

form as he desires it to go upon the record, before any discussion or argument is had. . . . An exception to the ruling must be taken in order to make it a ground of appeal." The purpose of this rule is to apprise the trial court of "the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." *State* v. *Braman,* 191 Conn. 670, 684, 469 A.2d 760 (1983).

"This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning,* supra. Our review of the trial court's ruling on an objection is limited to the grounds asserted by the party at trial. *State* v. *Braman,* supra, 684–85; *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *Manluccia,* supra. We have consistently stated that we will "not consider . . . evidentiary rulings . . . where no claim of error was preserved for review on appeal by proper objection and exception." *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978). "Only the most exceptional circumstances will save a claim, constitutional or otherwise, from the fatal consequences of a defendant's failure to make a timely objection. . . . The policy behind this rule is both ancient and sound and does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980).

Nothing in the record indicates in any way that the trial court or the state's attorney was alerted to the specific ground on which the defendant wanted to object. Despite the defendant's present claim that the trial court improperly found that the probative value

of the evidence outweighed its prejudicial effect, this claim was not properly preserved before the trial court.[9] No basis was offered by the defendant as to his motion to strike Rodrigues' testimony about the victim's lack of prior sexual activity.[10] No specific objection was made by the defendant to the limiting instruction given by the trial court, nor does the record reveal that the defendant ever requested the trial court to change its limiting instruction or expand on it. The defendant failed to comply with Practice Book § 288 by not placing on the record his specific ground as to the basis of his claim as to the inadmissibility of the proffered evidence. The record is also devoid of any exceptional circumstance that would mandate our review of this unpreserved claim, and we thus decline to afford review. See *State* v. *Baker,* supra, 56.

## II

The defendant next asserts that the trial court improperly permitted the state to file an amended information charging the defendant with sexual assault in the fourth degree after granting a motion for judgment of acquittal as to the original charge of sexual assault in the first degree. The defendant concedes, as he must, that he failed to preserve this claim for review, but

[9] See footnote 6, supra.

[10] After the testimony had already been elicited, the following occurred:

"[Attorney Dakers, Special Public Defender]: Before you go any further, I should make these two objections. Before I asked that the information be stricken as to her response that the patient indicated that she was not sexually active.

"[The Court]: And I trust that you claim that the question [is] in that history. Attorney Reidy?

"[Attorney Reidy, Assistant State's Attorney]: I claim it. It's very relevant, Your Honor."

The trial court then gave its limiting instruction, after which the following occurred:

"[Attorney Dakers]: Exception, Your Honor.

"[The Court]: You have an exception. Please proceed, Attorney Reidy."

claims that it is reviewable under the doctrine of *State v. Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We are unpersuaded.

In *State* v. *Golding,* supra, 239–40, our Supreme Court articulated four conditions that must exist before a defendant may prevail on an unpreserved claim of constitutional error: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of *any one of these conditions, the defendant's claim will fail.*" (Emphasis added.) We are free to focus our attention on whichever condition is most relevant in the circumstances of the particular case under review. Id., 240.

We are persuaded that the defendant cannot satisfy the third prong of *Golding* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial.

Additional facts are necessary for a full understanding of our disposition of this issue. At the completion of the state's evidence, the defendant moved for a judgment of acquittal on all four counts of the information pursuant to Practice Book § 883. The trial court appears to have granted the defendant's motion as to the count of the information charging the defendant with the crime of sexual assault in the first degree that was alleged to have occurred at 11:30 p.m. on November 6, 1989, and as to the count charging the defendant with unlawful restraint alleged to have occurred at the same time.[11] The trial court, with the acquies-

---

[11] See footnote 12, infra.

cence of defense counsel, allowed the state to file an amended information substituting a charge of sexual assault in the fourth degree for the count upon which the trial court had apparently granted the judgment of acquittal.[12] The defendant conceded, both at oral argument and in his brief, that he had acquiesced in the filing of the amended information about which he now complains.

The right of the state to file amendments to the information after the commencement of the trial is controlled by Practice Book § 624. "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. *An amendment may charge an additional or different offense with the express consent of the defendant.*" (Emphasis added.) Practice Book § 624. The rules

---

[12] While the trial court never expressly granted the motion for judgment of acquittal, the following occurred after the completion of the arguments by counsel on the motion:

"[The Court]: My anticipation is that the state will file a substituted information for assault in the fourth [sic] degree that will be the charge on count one." [The charge originally set forth in count one was the sexual assault in the first degree alleged to have occurred on November 6, 1989, at about 11:30 p.m.]

"[Attorney Dakers, Special Public Defender]: Okay.

"[The Court]: Count two will be all in the first degree [sexual assault in the first degree] with a lesser included with [sexual] assault in the fourth degree."

Before the arguments by counsel and the charge by the court, the trial judge spoke with the jury and informed them: "Now the third count [of the amended information] and last count, there are now three counts, not four. The third count pertains to the first incident, that is, the November 6th, at 11:30. It is now the only count that pertains to that incident, and it now is sexual assault in the fourth degree. Which is a little different than sexual assault in the first degree. . . . So now, essentially what we have with respect to the first incident is one count of sexual assault in the fourth degree . . . ."

of practice that relate to the filing of amendments to the information have their genesis in the mandate that requires that a defendant's rights be protected by his receiving "fair and adequate notice of the charges against him so as to afford him an opportunity to prepare an adequate defense." *State* v. *Cole,* 8 Conn. App. 545, 550, 513 A.2d 752 (1986); see also *State* v. *Young,* 191 Conn. 636, 644–46, 469 A.2d 1189 (1983). Because the defendant permitted the filing of the amended information without objection and acquiesced in the proceedings, it necessarily follows that the prophylactic purpose of the rule to require adequate notice has been fulfilled.

Here, the defendant was advised that the court anticipated that the state would file a substituted information charging him with "[sexual] assault in the fourth degree that will be the charge on count one." His attorney made the unsolicited comment, "Okay." Counsel for the defendant also indicated at the same time that he intended to request that the trial court charge the jury that sexual assault in the fourth degree is a lesser included offense of sexual assault in the first degree, a request that the trial court granted. This request coupled with counsel's affirmative response to the court's statement as to the filing of the substituted information is, in our judgment, tantamount to his express consent to amend the information. See *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987).

It is, in our judgment, disingenuous for a defendant to request a charge on sexual assault in the fourth degree as a lesser included offense as to the remaining count of sexual assault in the first degree, respond to the court's indication that he was going to permit an amendment to the information to charge sexual assault in the fourth degree as a substitute for another count of sexual assault in the first degree by responding "okay," and claim now that this action constituted erroneous action on the part of the trial court. Action

induced by the appellant cannot, under ordinary circumstances, be a ground of error. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983).

Further, the defendant did not contest that he had engaged in two sexual encounters with the victim, but rather admitted to the police that he had twice engaged in sexual conduct. He argued that the encounters had been consensual. Thus, nothing in the filing of the amended information could prejudice the defendant since it would not change his defense that any sexual contact with the victim had been consensual. See *State* v. *Franko,* 199 Conn. 481, 490–91, 508 A.2d 22 (1986).

Since the defendant cannot satisfy his burden of establishing the third requirement of *State* v. *Golding,* supra, we decline to afford review.

The judgment is affirmed.

In this opinion the other judges concurred.