STATE OF CONNECTICUT *v.* CRAIG ULEN
(10436)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued February 24—decision released April 13, 1993

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, was *Patricia Swords,* state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in a spousal relationship in violation of General Statutes § 53a-70b[1] and unlawful restraint in the first degree in violation of General Statutes § 53a-95.[2] Both

---

[1] General Statutes § 53a-70b provides in pertinent part: "(a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse . . . shall compel the other spouse . . . to engage in sexual intercourse by the use of force against such other spouse . . . or by the threat of the use of force against such other spouse . . . which reasonably causes such other spouse . . . to fear physical injury. . . ."

[2] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

crimes involved acts occurring on October 2, 1989. The jury acquitted the defendant of an additional count of sexual assault in a spousal relationship and of kidnapping in the first degree with a firearm. On appeal, the defendant asserts that the trial court (1) improperly permitted the state, under the theory of proving intent, motive or common scheme, to introduce evidence of the defendant's prior acts of misconduct consisting of an alleged rape and threat in September, 1989, (2) violated the defendant's constitutional rights to confrontation, to present a defense and to due process by prohibiting him from questioning the victim regarding her refusal to testify against him in an out-of-state prosecution based on the same incident for which he was being tried, and for prohibiting the defendant from bringing to the jury's attention the fact that a not guilty finding was entered by the out-of-state court, and (3) improperly instructed the jury on the permissible use of misconduct evidence that had been admitted for a limited purpose. We disagree and affirm the judgment of the trial court.

The jury could have reasonably found the following facts. The victim and the defendant were married in Springfield, Massachusetts, on October 23, 1976. Three children were born of this union, two sons and a daughter, ranging from three to fourteen years of age. The victim and the defendant separated in early August, 1989. On September 7, 1989, the victim obtained a restraining order from a Massachusetts court, prohibiting the defendant from contacting the victim at her home or place of employment.

The victim was employed as a pharmacy technician at Mercy Hospital in Springfield. While she was at work, her sister-in-law, the defendant's sister, Sharon Pouliot, took care of the victim's two younger children at the Pouliot home at 857 Belmont Avenue in Spring-

field. On October 2, 1989, in accordance with her usual practice, the victim dropped off the children at the Pouliot home and returned for them after work.

When the victim attempted to open her car door after driving into the Pouliot's driveway, she felt something hit the door and saw the defendant standing next to the car. The defendant told the victim to move over into the passenger seat. The victim attempted to blow the horn to attract attention but was unsuccessful. The defendant pushed the victim to the passenger seat, got into the vehicle, and backed the car out of the driveway.

As the defendant drove, he told the victim that he wanted to talk and "get this thing [the marital problems] straightened out once and for all." The defendant also stated that he could not understand why the victim wanted a divorce and why they could not agree on some terms that would permit them to reunite. The victim requested that the defendant take her back to the Pouliot home. The defendant continued to drive away from the Pouliot home.

He drove to Camp Ayapo in Somers, Connecticut. Upon arriving there, the defendant stopped the vehicle, exited the car, went around to the passenger side of the vehicle, opened the passenger side door, pulled the victim from the car, picked her up and carried her inside one of the cabins. In his hand, he held an object wrapped in a yellow jacket.

Once inside the cabin, he placed the wrapped object on the floor and told the victim to remove her clothing. When she refused, the defendant picked up the wrapped object, revealing it to be a gun. He then pointed the gun at her and again told her to undress. She refused. The defendant forcibly removed all of the victim's clothing, pushed her down onto a mattress on the floor, and pulled down his pants and underwear.

While undressing the victim, the defendant repeatedly stated that he had to make sure that he did not leave any marks on her.

The defendant demanded that the victim perform oral sex. She refused and stated, "No. I'll just bite it off." The defendant picked up the gun, placed it in the victim's vagina, and again demanded that the victim perform fellatio. When she refused, the defendant withdrew the gun and penetrated her with his penis. During this incident, the victim was extremely frightened.

When the defendant got off the victim, he told her to dress. He said to her, "Why did you make me do this?" She responded, "Craig, I didn't make you do this. You did it on your own and I don't know why."

The defendant pointed the gun at the victim and said, "You are not going to tell anybody, right? You're not going to tell your lawyer. You're not going to call the police. You're not going to tell anybody about this?" The victim refused to make this promise.

The defendant then went around the side of the cabin and walked down a hill. The victim got into the car but could not leave because the defendant had the car keys. She heard a noise and saw the defendant standing near the cabin. He motioned for the victim to lower the car window and when she complied, the defendant fired the gun into the ground. He then repeated his question about the victim's not telling anyone what had occurred and the victim agreed. As they returned to Springfield, the defendant repeated his questions about the victim's not filing a complaint and that the whole event had been her fault because she would not discuss a solution to their marital problems.

The defendant drove the victim to a lot in the area of Belmont Avenue near the defendant's truck. He

exited the car and removed items from the backseat. After a brief conversation, he left in his truck and the victim drove to the Pouliot house.

The victim told her brother-in-law that the defendant had accosted her when she arrived after work to pick up her children, taken her to Camp Ayapo, and raped her at gunpoint. She made several telephone calls from the Pouliot house before she went to her own house with her children. Shortly after the victim arrived at her house, the Springfield police were called.

The victim was sent to Baystate Medical Center where she was examined by medical personnel. She was then taken to a police station where she made a statement concerning the events of the evening.

The next day, the victim was contacted by Trooper Diane Davis of the Connecticut state police. Davis came to the victim's house and together they went to Camp Ayapo. They searched the area and the victim identified the mattress on which the sexual assault had taken place. The victim then gave a written statement to the Connecticut state police. On January 31, 1990, a warrant was issued for the arrest of the defendant.[3]

## I

The defendant first asserts that the trial court improperly permitted the state to introduce evidence of a prior act of misconduct involving another alleged rape and threat that occurred in September, 1989. The defendant also asserts that the court admitted the evidence to prove intent, motive or common scheme. We disagree with both assertions.

The following additional facts are necessary to a resolution of this issue. On September 1, 1989, the victim was in her house in Springfield talking on the telephone.

[3] Additional facts will be set forth where they are relevant to the issue raised.

The defendant had retained a key to the house when he moved out and used it on that day to gain admission to the victim's house. After a brief conversation, the defendant picked up the victim and carried her into her bedroom. He placed the victim on the bed and tied her arms to the bedposts. He removed her slacks and underclothing, pulled up her sweater, and fondled her. Each time that she screamed, he put a pillow over her head and told her to be quiet. The defendant pulled down his pants, and penetrated the victim's vagina with his penis. The victim kept telling the defendant to stop and to remove his penis because she was in pain. He continued to place the pillow over her head to stop her from screaming. He finally released her and she was able to dress and leave the room.

As a result of the defendant's actions, the victim sustained bruises to her face and marks on her wrists from the rope that was used to tie her to the bedposts. The victim made a complaint to the police on the day following the assault although she did not report the sexual assault because she was embarrassed to discuss it with the responding male officers.

The victim also testified, without objection, to a telephone call she received from the defendant four days before the October 2, 1989 incident, in which the defendant was alleged to have warned the victim to look over her shoulder whenever she left the house, entered the car, exited the car, entered her workplace, or went anywhere. The defendant now complains that the trial court improperly admitted this evidence. We disagree.

We note the very limited objection raised by the defendant to the evidence of the prior assault and sexual assault,[4] and the lack of objection to the questions

---

[4] The transcript of the proceedings sets forth the following with respect to the evidence of prior acts of misconduct:

"Q. [State's Attorney] Okay. And, ma'am, directing your attention to September 1 of 1989, do you recall that day?

relating to the telephoned threat a few days before the sexual assault that resulted in these charges.

We are limited in the scope of review that can be afforded to the claim of the inadmissibility of evidence of the prior sexual assault and assault committed on the victim by the defendant by the nature of the defendant's objection. The only objection raised to the proffered evidence of the prior acts of misconduct was that of relevancy. Our rules of practice require that a proper objection be made, setting forth the grounds on which the evidence is claimed to be inadmissible and an exception taken to the ruling of the trial court. Practice Book § 288.[5] Here, the only objection set forth by the defendant was a claim that the evidence was irrelevant. We review evidentiary rulings solely on the ground on which the party's objection is based. *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983); *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Dukes,* 29 Conn. App. 409, 416, 616

---

"A. Yes, I do.

"Q. Okay. And could you tell us what occurred on that day between yourself and the defendant?

"[Defense Counsel]: Objection, Your Honor. *Relevancy.*

"[State's Attorney]: I would claim it, Your Honor. It's intended to be an act of misconduct on the part of the defendant showing intent, an element of the crimes which are charged here, and particularly the kidnapping and unlawful restraint. It is also corroborating an element of the sexual assault, the use of force or threat of the use of force, an element of that crime. Also to show motive on the part of the defendant. Also showing a pattern of criminal conduct and abusive behavior towards that particular witness, all of which I would submit to the court is permissible under Connecticut law.

"[The Court]: I'm going to overrule the objection based on the offer of proof. *It appears to have relevance to these proceedings.*

"[Defense Counsel]: My exception please." (Emphasis added.)

[5] Practice Book § 288 provides in pertinent part: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. . . . An exception to the ruling must be taken in order to make it a ground of appeal."

A.2d 800 (1992), cert. denied, 224 Conn. 928, 619 A.2d 851 (1993). We thus limit our review to the issue of the relevancy of the evidence, the only ground for excluding the evidence asserted by the defendant at trial. *State* v. *Braman,* supra; *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *Dukes,* supra.

Our examination of the question of whether the trial court properly admitted into evidence testimony that the defendant claimed lacked relevance must be examined against the backdrop of what has long been our law, that the trial court is vested with broad discretion in resolving questions of relevancy. *State* v. *Santiago,* 224 Conn. 325, 326, 618 A.2d 32 (1992); *State* v. *Maxwell,* 29 Conn. App. 704, 715, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). " 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue.' " *State* v. *Boucino,* 199 Conn. 207, 228, 506 A.2d 125 (1986), quoting *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985).

Evidence of other misconduct is admissible if it meets two tests. The evidence must (1) be relevant and material to the establishment of knowledge, intent, motive, and common scheme or design or to the establishment of an element of the crime, and (2) have probative value that outweighs its prejudicial effect. *State* v. *Payne,* 219 Conn. 93, 98, 591 A.2d 1246 (1991); *State* v. *Jones,* 205 Conn. 638, 660, 534 A.2d 1199 (1987). We conclude, on the basis of our review of the record, that the trial court did not abuse its discretion in overruling the

defendant's objection based on relevancy because it is apparent that the evidence was relevant to a common scheme and to some of the elements of General Statutes § 53a-70b.

The defendant also asserts that the trial court either failed to engage in a balancing test to determine whether the probative value of the evidence outweighed its prejudicial effect or mistakenly concluded that its probative value exceeded its prejudicial effect. Although the defendant preserved his claim as to the relevancy of the misconduct evidence, nothing in the record indicates that the defendant ever raised as a ground of objection before the trial court that the prejudicial effect of the misconduct evidence outweighed its probative value. We have not yet reached a jurisprudential stage where we require trial judges to be mentally telepathic. Thus, we have consistently declined to review claims based on a ground different from that raised in the trial court. *State* v. *Dukes,* supra. We have applied this rule even where the claim made on appeal was the failure of the trial court to perform its balancing function, sua sponte, when the only objection raised before the trial court was based on relevance. *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985); *State* v. *Dukes,* supra.

The defendant does not claim entitlement to review based on any perceived violation of his constitutional rights; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); nor does the defendant raise the specter of plain error. Thus, we decline to depart from our well settled precedents and will not afford review to this unpreserved claim. See *State* v. *Weidenhof,* 205 Conn. 262, 277, 533 A.2d 545 (1987); *State* v. *Dukes,* supra.

We also conclude that the issue concerning the admissibility of the telephone threat is not reviewable because

of the defendant's failure to object properly to the proffered evidence. Practice Book § 288. No objection was interposed to the series of questions and answers relating to that telephone call.[6] "Our rules of practice make it clear that counsel must object to a ruling of evidence, state the grounds upon which objection is made, and take exception to the ruling to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection and exception." (Citations omitted.) *State* v. *Lizotte,* 200 Conn. 734, 742A, 517 A.2d 610 (1986). Because of the defendant's failure to comply with the rules of practice, the claim concerning the admissibility of this particular evidence was not properly preserved for appeal. *State* v. *Pecoraro,* 198 Conn. 203, 206, 502 A.2d 396 (1985).

The defendant has not claimed reviewability of this claim under the doctrine of *State* v. *Golding,* supra, and *State* v. *Evans,* supra. We therefore decline to review the merits of this unpreserved claim. *State* v. *Lizotte,* supra.

## II

The defendant next asserts that the trial court improperly prohibited him from questioning the victim

[6] The transcript of the proceedings sets forth the following with respect to the telephone call in issue:

"[State's Attorney]: Okay. And do you recall one phone call in particular ma'am ?

"A. Yes, I do.

"Q. And when did that occur?

"A. It happened on the Thursday before the incident on October 2.

"Q. And what happened that night?

"A. He called and threatened—he called and warned me to look over my shoulder whenever I leave the house, whenever I get into the car, get out of the car, my workplace, anywhere in general that I go."

The record also reflects that no objection was made to this testimony nor does the record reflect a motion to strike.

regarding her refusal to testify against him in a criminal prosecution in Massachusetts that arose out of the same incident as the Connecticut prosecution. He further asserts that the trial court improperly excluded evidence that a directed verdict of not guilty was entered in the Massachusetts prosecution. The defendant claims that the trial court's actions constituted an abuse of discretion and violated the defendant's constitutional rights, under both the state[7] and federal constitutions, to confrontation, to present a defense, and to due process of law. He also posits that this action constituted an improper restriction on his right of cross-examination. We are unpersuaded by these claims.

Certain additional facts are necessary to a proper resolution of this issue. As a result of his alleged conduct in Massachusetts that set in motion the chain of events that led to the defendant's arrest in Connecticut, the defendant was charged in Massachusetts with certain criminal violations. He was also charged in Massachusetts with certain criminal violations arising out of his alleged acts of prior misconduct. When the case was ready for trial in Massachusetts, the victim declined to testify, and, as a consequence, the trial judge entered findings of not guilty with respect to those charges. The victim never recanted her claims concerning the acts of misconduct, but simply indicated in open court that she did not want to testify.

The state of Connecticut filed a motion in limine seeking to preclude the defendant from introducing any and all evidence of the sexual conduct of the victim, of the proceedings in the Massachusetts District and Superior Courts regarding the charges against this defend-

---

[7] Because the defendant has not analyzed any of his state constitutional claims separately from their federal counterparts, we exercise our discretion to consider only his federal constitutional claims. *State* v. *Campbell,* 224 Conn. 168, 181 n.12, 617 A.2d 889 (1992); *State* v. *Glenn,* 30 Conn. App. 783, 785 n.3, 622 A.2d 1024 (1993).

ant arising out of the victim's complaints and of the ongoing relationship between the defendant and the victim.[8] Only the trial court's ruling with respect to the resolution of the Massachusetts prosecution is at issue.[9]

We must again note that in the entirety of the argument addressed to the issue of the motion in limine, the defendant never asserted that the granting of the motion addressed to the issue of the Massachusetts prosecution would implicate his right to confrontation or deny him any form of due process. In short, no claim of a constitutional violation was addressed to the trial court. The only basis on which the defendant opposed the motion in limine was his claim that the victim's declination to testify in Massachusetts went to the issue of the victim's credibility. Thus, he asserted that this information could be used by him for impeachment purposes. We also note that the defendant does not claim that he was not permitted wide latitude to explore fully the factual predicate for the claims of the misconduct that was alleged to have occurred on September 1,

[8] The motion in limine read in pertinent part: "The State of Connecticut hereby moves . . . that the defendant be precluded from introducing any and all evidence of:

"1. the sexual conduct of the victim/complainant . . .

"2. the proceedings held in the District and/or Superior Court in Springfield, Massachusetts, docket number 89-6782-6787, arising out of the arrest of Craig Ulen on or about October 2, 1989, by the Springfield Police Department. Said proceedings concern criminal charges filed against the defendant by complaint . . . for incidents occurring on October 2, 1989 and September 1, 1989;

"3. the ongoing relationship between [the victim] and Craig Ulen subsequent to October 2, 1989."

[9] The trial court ruled as follows with respect to the motion in limine: "I'm going to grant the motion in limine with respect to paragraph two. *Of course, you may cross examine the witness as to the incidents of September first, when it happened, whether it happened the way she said it happened, but as far as the court proceedings, I am going to grant the motion in limine to prohibit questioning about the court proceedings involved in that.*" (Emphasis added.)

"[Defense Counsel]: May the court note my exception?"

1989, as well as the factual predicate for the charges on trial. His only complaint is that he was precluded from exploring the court proceedings in Massachusetts and the result. We do not agree that the trial court acted improperly in granting the motion in limine and excluding this evidence.

In precluding the defendant from exploring the Massachusetts court proceedings, the trial court did not in any way preclude him from completely exploring the facts that underlay the defendant's arrest in Massachusetts or the truthfulness of those factual assertions made by the victim.[10]

We also note that the transcript reveals that the defendant conducted a broad cross-examination of the victim that included extensive inquiry as to the events that were alleged to have taken place in Massachusetts in September, 1989. As a result of that cross-examination, the jury heard the victim examined as to past illegal narcotic use, money disputes between her and the defendant and the fact that there was a deteriorating relationship between her and her mother-in-law and sister-in-law. In addition, she admitted that at the

---

[10] We also note that despite the ruling of the trial court with respect to the motion in limine, in the course of the cross-examination of the victim, the jury heard testimony, without objection, that the Massachusetts prosecution had been dropped.

"Q. When did you tell [Sharon Ulen] that, on the second of October?

"A. No, I told her on the day that we had gone in and I had the charges dropped in Massachusetts. . . .

"Q. When, in May of 1990?

"A. I don't remember the exact date. *We went in and had those charges dropped.*

* * *

"Q. Have you had any discussion with [Marguerite Ulen] about that September rape having occurred at all other than some time when you went to court?

"A. Like I said before, the only time I discussed it or made any mention of it was the day *we had gone to court in Springfield and had the charges dropped in Massachusetts.*" (Emphasis added.)

time she applied for and secured the Massachusetts restraining order on September 7, 1989, she did not tell the judge in her application that she had been raped by the defendant on September 1, 1989. She also admitted that she had not disclosed to the two male investigating officers the fact that she had been raped by the defendant. More important, the evidence that the defendant now asserts was excluded from the jury, was in fact, in large measure, exposed to the jury for use in weighing the victim's credibility.[11]

"The Confrontation Clause of the Sixth Amendment [to the United States constitution] guarantees the right of an accused in a criminal prosecution to be confronted with witnesses against him. . . .. [T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. . . . While [c]ross-examination is the principal means by which the believability of a witness and the truth [or reliability] of his testimony are tested . . . a defendant's right to cross-examination is not absolute and is subject to reasonable limitation by the [trial] court. . . . The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge. This discretion comes into play, however, only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Milner,* 206 Conn. 512, 524–25, 539 A.2d 80 (1988).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider

---

[11] See footnote 10, supra.

the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Santiago,* 224 Conn. 325, 331, 618 A.2d 32 (1992). Here, it is disingenuous for the defendant to suggest that in applying this test an appellate court should conclude that his cross-examination of the victim was unduly restricted since the very evidence that was the subject matter of the motion in limine was brought to the attention of the jury by the victim's responses to questions put to her on cross-examination.[12]

The defendant further contends in his statement of the issues that the trial court's action also constituted a violation of his right to present a defense and his right to due process. His argument, however, is limited to his claim that the trial court's action constituted a denial of his right to confrontation, and he has failed to brief his claim fully with respect to the other two aspects; thus, we deem those two grounds abandoned. *State* v. *Marra,* 222 Conn. 506, 536 n.16, 610 A.2d 611 (1992); *State* v. *Rumore,* 28 Conn. App. 402, 410–11, 615 A.2d 1054, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992).

Finally, the defendant argues that the court improperly excluded relevant evidence. We do not agree.

As we have already pointed out, the evidence supposedly excluded by the trial court's ruling on the motion in limine was presented to the jury. Further, the issue of the credibility of the victim was more than adequately covered by the extensive and exhaustive cross-examination to which she was subjected. Thus, any additional evidence as to the withdrawal of the Massachusetts criminal prosecution would be cumulative

---

[12] See footnote 10, supra.

of the already extensive evidence presented in the defendant's attempt to impeach the victim's credibility. The trial court did not abuse its discretion in its relatively minor limitation on the scope of the cross-examination. See *State* v. *Castonguay,* 218 Conn. 486, 501, 590 A.2d 901 (1991).

The claim of the defendant is without merit.

## III

The defendant next asserts that the trial court improperly instructed the jury as to the permissible use of the prior misconduct evidence that had been admitted for a limited purpose. We are unpersuaded.

We first note that the defendant filed no request to charge with respect to the issue of the proper use of other misconduct evidence, nor did he take exception to the cautionary instruction or to that portion of the jury charge that he now attacks. "The [appellate] court shall not be bound to consider error as to the giving of, or failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ." Practice Book § 852.

Despite the clear mandate of Practice Book § 852, the defendant nonetheless asserts that the claim is reviewable under the plain error standard of Practice Book § 4185. As an alternative, he claims that if the issue cannot be resolved under the plain error doctrine, he is then entitled to review pursuant to the doctrine of *State* v. *Golding,* supra, and *State* v. *Evans,* supra. We do not agree.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review

the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 239–40. "We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews,* 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

We conclude that the defendant cannot satisfy the second prong of *Golding,* since he has failed to demonstrate that his claim alleges a violation of a fundamental constitutional right. *State* v. *Golding,* supra. Robing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature. See *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). We have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude. *State* v. *Servello,* 14 Conn. App. 88, 94–95, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988). Thus, we decline to afford *Golding* review to this claim.

We also conclude that the charge concerning the use of evidence of prior misconduct is not entitled to plain error review. See id., 95; Practice Book § 4185.[13] "Where a trial court's action does not

[13] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."

result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. . . . Such review is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988). Having concluded that the charge to the jury of which the defendant now belatedly complains did not implicate his constitutional rights so as to warrant review under *State* v. *Golding,* supra, we find that the charge as given did not result in manifest injustice, and, therefore, does not merit plain error review.

The judgment is affirmed.

In this opinion the other judges concurred.