# STATE OF CONNECTICUT *v.* GEORGE MOORE
## (AC 20037)

Lavery, C. J., and Mihalakos and O'Connell, Js.

Argued June 6—officially released September 25, 2001

*Martin Zeldis,* senior public defender, with whom were *Andrea A. Dunn,* certified legal intern, and, on the brief, *Pamela S. Nagy,* assistant public defender,

and *Rebecca A. Steeves*, certified legal intern, for the appellant (defendant).

*Ronald Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3),[1] and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[2] The defendant claims that the judgment of conviction should be reversed and that he should be given a new trial because (1) the trial court improperly admitted evidence of his prior assault on the victim, (2) he was deprived of a fair trial by prosecutorial misconduct and (3) the trial court failed to maintain impartiality. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and Willard Young, the victim of

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

General Statutes § 53a-3 (4) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

General Statutes § 53a-3 (3) defines "physical injury" as "impairment of physical condition or pain . . . ."

the first degree assault, both resided on the third floor of an apartment house on Mather Street in Hartford and had a history of disagreements culminating in violence. On May 6, 1998, the defendant and Young engaged in a fight in which the defendant, after knocking a butter knife out of Young's hand, was fearful that Young was returning to his room for another weapon. The defendant, who was wearing cowboy boots and who claimed to have martial arts training,[3] kicked Young fifty-four times. After Young fell to the floor, the defendant satisfied himself that Young was unconscious by checking his pulse and then proceeded to stomp on his head three times. The defendant argues that his conduct was justified as self-defense.

Young was transported to Saint Francis Hospital and Medical Center where he was placed on a life support apparatus. He suffered serious injuries including brain trauma, subdural hematoma, scars over his eyes, speech problems and sleeplessness. He was a heavy drinker and, at the emergency room, had a 0.34 blood alcohol content.[4]

Willie Fair, the third degree assault victim, also resided in the same apartment building and was attracted to the scene by the noise. Thinking that Fair was going to intervene, the defendant kicked him in the groin, causing him pain.[5]

I

The defendant first claims that the court abused its discretion by permitting the state to introduce evidence

---

[3] In his voluntary statement, the defendant stated that he had had training in judo, karate and jujitsu.

[4] A blood alcohol content (BAC) of 0.34 refers to a ratio of alcohol in the blood that is thirty-eight hundredths of 1 percent of alcohol by weight. For purposes of comparison, a person is deemed under the influence of alcohol to the extent that he may not operate a motor vehicle if his BAC is ten hundredths of 1 percent (0.10) or more of alcohol, by weight. See General Statutes § 14-227a (a).

[5] See footnote 2.

that the defendant had assaulted Young approximately six months prior to the present assault. The record shows that the court granted the defendant's motion in limine to preclude the state from referring to his prior criminal record. The defendant also obtained an order requiring the state to give him notice of all prior acts of misconduct that the state intended to use against him. The general rule is that evidence of prior acts of misconduct or involvement in prior crimes is not admissible to show a defendant's bad character or tendency to commit criminal acts. *State* v. *Pollitt*, 205 Conn. 61, 69, 530 A.2d 155 (1987).

The defendant challenges (1) the admissibility of evidence of his prior assault on Young and (2) the admissibility, both in the state's case-in-chief and on rebuttal, of the counseling for violence that he received as a result of the previous assault.

The issue arose when the state, on cross-examination of the defendant, began questioning him concerning a prior incident in which he allegedly also kicked Young in the head, which incident resulted in the defendant receiving counseling on alternative solutions to violence. The defendant argues that this cross-examination, as well as the testimony on rebuttal from the defendant's violence counselor, violated the letter and spirit of the motion in limine and the order pertaining to prior bad acts. The purpose of the motion in limine and the order was to ensure that the jury did not learn of the prior incident and counseling until the court had heard and ruled on their admissibility. This was a proper utilization of these motions and a violation of them might lead to a valid objection if there was nothing more to the equation.

In this case, however, the jury already had learned of the prior assault when the court admitted the defendant's voluntary written statement into evidence with-

out objection.[6] The defendant initially had objected to the admission of this statement, but then specifically withdrew his objection and asked that the statement be admitted. Even if we were to assume, without deciding, that the court's ruling was improper, it would not be a reason to reverse the judgment of conviction. It is well established that an improper ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case. *State* v. *McNair*, 54 Conn. App. 807, 814, 738 A.2d 689, cert. denied, 251 Conn. 913, 739 A.2d 1249 (1999). Accordingly, the admission of evidence of the prior assault was not improper because it was merely cumulative of what was already before the jury from the defendant's statement. See *State* v. *Randolph*, 190 Conn. 576, 589–90, 462 A.2d 1011 (1983).

On cross-examination, the defendant denied that he had received counseling for violence. To rebut this denial, the state called John Mahoney, who had worked for a program called "Community Solution Pretrial Services." Mahoney testified concerning his counseling of the defendant in alternative responses to avoid violence.

The defendant's sole objection to Mahoney's testimony was on the ground that it was a privileged communication. The court denied the objection on that ground, and the defendant does not appeal concerning the court's ruling on the issue of privilege. Instead, he now argues that Mahoney's testimony was improperly offered to impeach a collateral matter.

"Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. See *State* v. *Rothenberg*, 195 Conn. 253,

---

[6] In his written statement, the defendant stated in part, "Last January, 1998, I got arrested over [Willard Young]. I kicked him in the face and knocked him out because he came to my door with a knife."

263, 487 A.2d 545 (1985). The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial. Id. By failing to object . . . the defendant failed to preserve this claim. *State* v. *Couture*, 194 Conn. 530, 553–54, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see also Practice Book §§ 288 and 4185 [now §§ 5-5 and 60-5]." *State* v. *Christiano*, 228 Conn. 456, 464, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); see *State* v. *Dukes*, 29 Conn. App. 409, 416–17, 616 A.2d 800 (1992), cert. denied, 224 Conn. 928, 619 A.2d 851 (1993). "We have not yet reached a jurisprudential stage where we require trial judges to be mentally telepathic. Thus, we have consistently declined to review claims based on a ground different from that raised in the trial court." *State* v. *Ulen*, 31 Conn. App. 20, 29, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Accordingly, we will not review this unpreserved claim.

II

The defendant next claims that the state's attorney violated his right to a fair trial by expressing her personal opinion, by improperly characterizing another witness' testimony and by violating the motion in limine concerning evidence of prior bad acts.

Our standard of review of prosecutorial misconduct is well established. "In analyzing this claim, we do not focus solely on the prosecutor's conduct. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Jeudis*, 62 Conn. App. 787, 793, 772 A.2d 715, cert. denied, 256 Conn. 923, 774 A.2d 140 (2001). "In determining whether the defendant was denied a fair

trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 297–98, 772 A.2d 1107 (2001).

The defendant claims that during cross-examination and closing argument, the prosecutor, through sarcasm and direct comments, improperly injected her own opinion as to the credibility of the defendant's self-defense theory.

During cross-examination of the defendant, the prosecutor questioned him regarding his claim of self-defense and stated: "All right. So you're telling me now, it wasn't self-defense? You just snapped, lost your temper . . . . All right. So he didn't lose consciousness until the fifty-fourth kick, is that what you're telling me?" Defense counsel objected to both of these remarks, and the jury was excused. The court warned the prosecutor not to characterize the evidence and

that he would properly instruct the jury on its duty to decide the evidence as it hears it.

In her closing argument, the prosecutor stated: "Nobody in their right mind, no reasonable person could believe that they needed to use force in self-defense against a helpless man, unarmed, lying face down in a pool of blood. This defense, in short, ladies and gentlemen, is totally ridiculous.[7] . . . So I apologize. When I called it ridiculous, it's not a credible defense. All right. It's just not credible. . . . I submit to you he was lying and waited for this victim and when this victim came up to his door and tried to put the key in his door, he saw his opportunity and he did his Bruce Lee imitation, and he went over and kicked him in the left side of the head and that knocked the victim unconscious." Defense counsel objected several times during the state's closing argument and moved for a mistrial on the grounds that the prosecutor vouched for the charges, personally appealed to the jurors and misrepresented the law of self-defense. The court noted that there was some vouching but that it was not egregious, and it denied the mistrial motion.

We acknowledge that it is improper for a prosecutor to express his or her opinion, directly or indirectly, as to a defendant's guilt. *State* v. *Singh*, 59 Conn. App. 638, 647, 757 A.2d 1175 (2000), cert. granted on other grounds, 255 Conn. 935, 767 A.2d 1214 (2001). We also recognize, however, that advocates must be allowed latitude in argument to accommodate for the zeal of counsel in the heat of argument. *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 399–400, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). "The mere use of phrases such as 'I submit,' 'I find,' or 'I believe' does not constitute improper argument." Id., 400.

---

[7] The defendant objected, and the court instructed the jury to disregard the remark.

The prosecutor's comments were an attempt to explore the defense in light of the defendant's testimony and a summarization of the evidence introduced during trial. Furthermore, any impropriety in the prosecutor's comments was assuaged by the court's instructions to the jury to disregard the statements. Viewed in the context of the entire trial, we conclude that the comments did not deprive the defendant of a fair trial.

The defendant also claims that, during closing argument, the prosecutor injected her own expertise into the case when she made the following statements: "The defendant is going to ask for lesser included offenses to try to argue to you that this wasn't serious physical injury. Come on, gentlemen, use your head here. All right. The man suffered a fractured eye socket. He suffered a hematoma to the brain. He has scars from cuts that he got when he kicked him in the head and the face that went down to the bone, and he was in the hospital for a week, in a rehab hospital for another week and in a nursing home for two months. Certainly you could tell from his testimony that this man still has lingering consequences from this beating. He's clearly brain damaged"; "[d]on't be swayed by the arguments for the lesser included offenses. This was an assault in the first degree. This man suffered serious physical injury. Now, also part of the bill of particulars which is . . . the charging document that I had to file in order to get this case going forward . . . you'll see that I charged two different subsections of the assault in the first degree statute. So let's talk about those for a moment . . . because I think it's helpful if we do that"; "[e]verybody knows that the brain is a vital organ"; "[w]hen blood dries, you know from your common experience, it doesn't stay bright red. He's saying six months ago that's what this blood is from. You know that's not true"; and, "That is not self-defense. So even if—I don't really care whether you credit the defen-

dant's version or you credit the victim's version of what happened here—under no version is it self-defense to follow an unarmed, defenseless man who is crawling away from you, rather than toward you, down the hall and stomp on his head fifty-four times."

We conclude that the prosecutor was merely asking the jury to use its common sense in evaluating the injuries to the victim, the blood at the scene and the defendant's theory of self-defense. In addition, the court immediately corrected the prosecutor's isolated comment on the lesser included charges and, therefore, did not permit the comment to prejudice the defendant.

The defendant next claims that he is entitled to a reversal of his conviction because the prosecutor violated the court's ruling on the motion in limine that precluded the state from referring to the defendant's prior criminal record.

In part I of this opinion, we determined that the admission of the evidence of the defendant's prior assault was not improper because it was already before the jury from the defendant's statement. Furthermore, we cannot say that the prosecutor's questions were so offensive that a reversal of the defendant's conviction is necessary. In fact, the court itself found that the prosecutor's questions did not directly undermine the court's ruling. Accordingly, we conclude that the prosecutor's reference to the prior assault did not amount to prosecutorial misconduct.

Finally, the defendant claims that the prosecutor improperly asked the defendant to characterize the testimony of another witness as untruthful. During cross-examination of the defendant, the following colloquy occurred:

"[Prosecutor]: Okay. You can have a seat, sir. And so while [the witness] and you were in the hallway [of

your apartment house], you went over and kicked Mr. Young in the head a couple of times. Right?

"[Defendant]: No.

"[Prosecutor]: No? [The witness] was lying about that?

"[Defendant]: Yes."

"Although our Supreme Court has disapproved of asking one witness to characterize the testimony of another witness, such action does not automatically result in prejudicial error. . . . This is so, particularly in a case where the central issue is one of credibility and the trial court has properly instructed the jury that it is to evaluate the credibility of the witnesses independently and weigh their testimony, as was the case here. In such a case, characterization of testimony by a witness does not deprive the jury of its essential fact finding function." (Citation omitted.) *State* v. *Harvey*, 27 Conn. App. 171, 180–81, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). On the basis of our review of the record, we conclude that the prosecutor's questions were neither inflammatory nor likely to have contributed to the guilty verdict and, therefore, did not constitute prosecutorial misconduct.

## III

In his final claim, the defendant contends that the court violated his right to a fair trial when it intervened by questioning witnesses and by making partisan comments in front of the jury. The defendant contends that unpreserved claims such as this have been reviewed under the doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The sole authority cited for this proposition is *State* v. *Harris*, 28 Conn. App. 474, 477, 612 A.2d 123, cert. denied, 223 Conn. 926, 614 A.2d 828 (1992). In *Harris*, this court reviewed the defendant's claim but concluded that the defendant

failed to satisfy the third prong of *Golding* because the defendant did not demonstrate that a constitutional violation clearly existed that clearly deprived him of a fair trial.

On the basis of our review of the record, we conclude that the court's questioning of witnesses was for the purpose of clarifying testimony and did not prejudice the defendant. Accordingly, the defendant has failed to prove that a constitutional violation exists under the third prong of *Golding* and, therefore, cannot prevail on his unpreserved claim.

The state argues that the claim should be controlled by *State* v. *McDuffie*, 51 Conn. App. 210, 216, 721 A.2d 142 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999), and *Churchill* v. *Allessio*, 51 Conn. App. 24, 38, 719 A.2d 913, cert. denied, 247 Conn. 951, 723 A.2d 324 (1998). Both of these cases stand for the principle that if the court's conduct during trial is such that it indicates an appearance of judicial bias, then a motion for disqualification or a motion for a mistrial must be made. "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 792, 621 A.2d 267 (1993). "Absent plain error, a claim of judicial bias cannot be reviewed on appeal unless preserved in the trial court." *Small* v. *Stop & Shop Cos.*, 42 Conn. App. 660, 663, 680 A.2d 344 (1996). The defendant has made no claim of plain error in this case. Accordingly, we will not review this claim concerning the court's conduct.

The judgment is affirmed.

In this opinion the other judges concurred.