STATE OF CONNECTICUT *v.* ANTHONY JEFFERSON
(AC 20112)

Lavery, C. J., and Mihalakos and Healey, Js.

Argued September 18—officially released December 11, 2001

*Pamela S. Nagy*, special public defender, with whom, on the brief, were *G. Douglas Nash*, public defender, and *Diane C. Iglesias* and *Robert C. Koetsch*, certified legal interns, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, assistant state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. The defendant, Anthony Jefferson, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] and possession of

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . distributes, sells . . . dispenses . . . with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives . . . to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).[2] On appeal, the defendant claims that (1) the state failed to present sufficient evidence to support his conviction, (2) the trial court improperly admitted into evidence the nature of his prior felony conviction for escape and (3) the prosecutor engaged in misconduct that violated the defendant's constitutional right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 17, 1998, officers Keith Grieco and Jeremy DePietro of the Bridgeport police department were patrolling the west side of Bridgeport in a marked patrol car when an unidentified man approached their vehicle and informed them that a heavyset adult black man, with long dreadlocks, dressed in a red shirt and baggy jeans, sitting at a card table, was selling narcotics near building fifteen in the P.T. Barnum housing project. The officers immediately proceeded to the housing project to investigate the complaint, arriving at approximately 7:45 p.m. Upon arriving, they parked their patrol car near the administration building, exited the vehicle and walked to a location that provided a clear view of building fifteen.

---

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by . . . distributing, selling . . . dispensing . . . with the intent to sell or dispense, possessing with the intent to sell or dispense . . . any controlled substance in or on, or within one thousand five hundred feet of . . . a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section . . . 21a-278. To constitute a violation of this subsection, an act of . . . possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a . . . public housing project . . . . For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

From that location, the officers observed the defendant sitting at a card table near the stairwell of building fifteen. The defendant fit the description provided by the unidentified man. After a few minutes, the officers observed a "white male or light skinned Hispanic male" approach the defendant and engage him in a brief conversation. The defendant then stood up, walked to the stairwell, reached under the lip of the stairwell and pulled out a "glassine fold," which Grieco testified was consistent with the packaging of narcotics. The defendant gave the man the glassine fold in exchange for paper currency. As soon as the transaction was complete, the man left the area and the defendant again reached under the lip of the stairwell, pulled out a plastic bag containing multiple glassine folds, looked inside it and then replaced it under the lip of the stairwell.

At that point, the officers walked to the stairwell where the defendant had replaced the plastic bag. DePietro reached under the lip and pulled out two plastic bags, each containing multiple glassine folds that were similar to the fold the defendant had handed to the buyer. The state toxicology laboratory subsequently tested the contents of the two bags. One bag was found to contain seventy-eight glassine folds of cocaine, weighing a total of 6.9 grams, and the other bag was found to contain sixty-six glassine folds of heroin, weighing a total of 3.4 grams.

After DePietro found the two bags, he handed them to Grieco. At the same time, the defendant started to walk hastily away. DePietro and Grieco, both in full uniform, instructed the defendant to stop. In response, the defendant looked back at them and began to run toward building eleven. The officers chased the defendant to the back of building eleven, where they observed him enter apartment 102. They knocked on the door, and Gerald Williams answered. The officers explained

to Williams why they were there and asked him if the defendant was in the apartment. Williams replied that no one was there except his girlfriend and shut the door. The officers then decided to call dispatch to request backup units. Shortly thereafter, the officers' supervisor arrived on the scene with backup units.

The supervisor again explained to Williams why the police officers were there and asked him if the defendant was in the apartment. A few minutes later, the defendant walked out of the apartment. As he walked out, DePietro advised him to place his hands on the wall and that he was under arrest. The defendant became verbally abusive and resisted DePietro's efforts to arrest him. As a crowd of onlookers began to gather, DePietro forcibly handcuffed the defendant and took him into custody. No narcotics or money were found on the defendant. The man that the officers observed buying drugs from the defendant was not apprehended.

Thereafter, the defendant was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a public housing project. After the jury returned the guilty verdict, the defendant filed a motion for a judgment of acquittal and a motion for a new trial. The court denied both motions and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the state failed to present sufficient evidence to support his conviction and, therefore, he was deprived of his constitutional right to due process. Specifically, the defendant argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he exercised constructive possession over the cocaine and heroin found under

the lip of the stairwell, and that he had the intent to sell the narcotics.[3] We disagree.

Initially, we note that because the defendant did not raise those claims at trial, they are unpreserved. The defendant maintains, however, that they are reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] We agree with the defendant that his claims are reviewable.

"Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *O'Neil*, 65 Conn. App. 145, 151, 782 A.2d 209, cert. granted on other grounds, 258 Conn. 932, 785 A.2d 229 (2001). Our Supreme Court has stated that "*Jackson* v. *Virginia*, [443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." *State* v. *Adams*, 225 Conn. 270, 275–76 n.3,

---

[3] The defendant makes no argument that the evidence was insufficient to support that portion of General Statutes § 21a-278a (b) that requires intent to sell within 1500 feet of a public housing project.

[4] Pursuant to *State* v. *Golding*, supra, 213 Conn. 233, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

623 A.2d 42 (1993). Accordingly, we will review the defendant's sufficiency of the evidence claims.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 175, 778 A.2d 955 (2001).

"We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"It bears emphasis that [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . .

nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, 56 Conn. App. 742, 752–53, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000).

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [jury] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 541, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000).

A

The defendant first argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he exercised constructive possession over the cocaine and heroin found under the lip of the stairwell. We disagree.

"[T]o prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that

the accused knew of the character of the drug and its presence and exercised dominion and control over it. . . . Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) Id., 542.

In the present case, the state presented sufficient evidence to support the inference that the defendant knew of the presence of the narcotics and exercised control over them. On July 17, 1998, Grieco and DePietro were informed by an unidentified man that a heavyset adult black man, with long dreadlocks, dressed in a red shirt and baggy jeans, sitting at a card table, was selling narcotics near building fifteen in the P.T. Barnum housing project. During their surveillance of building fifteen, the officers observed the defendant, who fit that description, sitting at a card table near the stairwell of building fifteen. After a few minutes, they observed a "white male or light skinned Hispanic male" approach the defendant and engage him in a brief conversation. The defendant then stood up, walked to the stairwell, reached under the lip of the stairwell and pulled out a "glassine fold," which was consistent with the packaging of narcotics. The defendant gave the man the glassine fold in exchange for paper currency.

As soon as the transaction was completed, the man left the area, and the defendant again reached under the lip of the stairwell, pulled out a plastic bag containing multiple glassine folds, looked in it and then replaced it under the lip of the stairwell. When the officers

searched under the lip of the stairwell, where the defendant had replaced the plastic bag, they found two plastic bags containing multiple glassine folds of narcotics that were similar to the fold the defendant had handed to the buyer. The two plastic bags were the only objects the officers found under the lip of the stairwell. That evidence explicitly demonstrates the defendant's awareness of the presence of the narcotics, and his dominion and control over them. See *State* v. *Thompson*, 46 Conn. App. 791, 798, 700 A.2d 1198 (1997); *State* v. *Melillo*, 17 Conn. App. 114, 117–18, 550 A.2d 319 (1988).

Moreover, when the officers discovered the narcotics under the lip of the stairwell, the defendant hastily left the scene, despite being instructed to stop by the officers. The defendant's behavior indicated a consciousness of guilt. See *State* v. *Gilbert*, 52 Conn. App. 531, 542, 727 A.2d 747, cert. denied, 249 Conn. 905, 733 A.2d 224 (1999); *State* v. *Reddick*, 36 Conn. App. 774, 787, 654 A.2d 761 ("[w]hen considered together with all the facts of the case, flight may justify an inference of the accused's guilt"), cert. denied, 232 Conn. 922, 656 A.2d 671 (1995). On the basis of the cumulative effect of the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant was in constructive possession of the narcotics that the officers found under the lip of the stairwell.

### B

The defendant next argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he intended to sell the cocaine and heroin that were found under the lip of the stairwell. We disagree.

"Proof of intent is usually established through circumstantial evidence, from which the jury may draw

reasonable and logical inferences. . . . The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell." (Citation omitted; internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 667, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001).

In the present case, the state presented sufficient evidence to support the inference that the defendant intended to sell the narcotics. The defendant was arrested in the P.T. Barnum housing project, which is particularly well known for its high level of narcotics transactions. At the time of his arrest, the defendant constructively possessed seventy-eight glassine folds of cocaine, weighing 6.9 grams, and sixty-six glassine folds of heroin, weighing 3.4 grams. That quantity of narcotics is consistent with street level narcotics sales and is indicative of the defendant's intent to sell the narcotics. Additionally, the large number of glassine folds in the defendant's possession is a fact from which the inference of possession with intent to sell can be drawn. See *State* v. *Lee*, 53 Conn. App. 690, 695, 734 A.2d 136 (1999). Moreover, the evidence presented at trial indicates that the defendant actually sold a glassine fold to an unidentified buyer. On the basis of the cumulative effect of the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant intended to sell the narcotics that were found under the lip of the stairwell.

Therefore, construed in the light most favorable to sustaining the verdict, the evidence adduced at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant possessed narcotics with the

intent to sell. Accordingly, the defendant cannot prevail on his claims of evidentiary insufficiency.

## II

The defendant next claims that the court improperly admitted into evidence the nature of his 1993 felony conviction for escape. Specifically, he argues that the prejudicial effect of its admission outweighed its probative value as to credibility.[5] He suggests now, as he did in his motion in limine, that the court should have allowed the state to refer to the escape conviction only as an unspecified felony conviction. We are not persuaded.

The following additional facts are relevant to our resolution of the defendant's claim. Prior to trial, the defendant filed a motion in limine to preclude the state from introducing evidence of his prior felony convictions for the purpose of impeachment. On March 11, 1999, the court heard argument on the motion and ruled that (1) the state could not mention a 1985 felony conviction because of remoteness,[6] (2) the state could mention as unspecified felony convictions a 1987 conviction for possession of narcotics with intent to sell, another 1987 felony conviction, a 1989 conviction for assault in the second degree, a 1989 conviction for robbery in the second degree and a 1993 conviction for sale of narcotics, and (3) the state could mention as a named felony a 1993 conviction for escape.

In light of the court's ruling, the state, during its cross-examination of the defendant and again during its closing argument, mentioned his prior felony convic-

[5] The defendant does not claim that his prior escape conviction should have been excluded because of remoteness.

[6] The court also ruled that the state could not mention a 1998 conviction for reckless endangerment and a 1998 conviction for possession of marijuana because both were misdemeanors.

tions, including his escape conviction.[7] The court, during its final charge to the jury, cautioned the jury that the defendant's prior felony convictions were admissible only to the extent that they bore on his credibility.[8]

"It is well settled that evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of which is that [a] criminal defendant who has previously

---

[7] During the state's cross-examination of the defendant, the following colloquy occurred:

"[Prosecutor:] First of all, we'll go over your criminal record. In 1987, you were convicted of a felony; correct?

"[Defendant:] Yes.

"[Prosecutor:] Later that year in '87, you were convicted of another felony; correct?

"[Defendant:] I'm not quite—it could be. I'm not quite sure.

"[Prosecutor:] In 1989, you were convicted of two felonies.

"[Defendant:] Yes.

"[Prosecutor:] In 1993, you were again convicted of a felony.

"[Defendant:] Yes.

"[Prosecutor:] In 1993, you were convicted of escape, which is a felony; correct?

"[Defendant:] Yes.

"[Prosecutor:] Then, we are here today; so, is that a long record or a medium record?

"[Defendant:] A little more than a medium record."

During the state's closing argument, the prosecutor commented: "Now, the defendant in and of himself considers his felony convictions and his escape conviction as a medium to long record."

[8] In its final charge to the jury, the court, without objection, instructed the jury regarding the witnesses' prior felony convictions as follows: "Now ladies and gentlemen, there was testimony of prior convictions on the part of the defendant, as well as prior convictions on the part of other witnesses. A witness' conviction of a prior felony may be weighed by you, the jury, in testing the credibility of the witness, but only for that purpose.

"You may consider that everything else being equal, you would not believe the testimony of a person who has been committed or has committed a serious crime as readily as you would believe the testimony of a person of good character. You are not required to disbelieve a witness because he has been previously convicted of a felony. It is simply something you may take into consideration or take into account in judging his or her credibility. The weight you give to this evidence in this regard is for you to decide."

been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value." (Citations omitted; internal quotation marks omitted.) *State* v. *Banks*, 58 Conn. App. 603, 615–16, 755 A.2d 279, cert. denied, 254 Conn. 923, 761 A.2d 755 (2000).

Our Supreme Court has identified "[t]hree factors [that] should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior conviction." (Internal quotation marks omitted.) *State* v. *Small*, 242 Conn. 93, 110, 700 A.2d 617 (1997)." The trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 72–73, 602 A.2d 571 (1992).

As to the first criterion, "a high degree of prejudice can be expected when the prior crime is quite similar to the crime charged because of the jury's tendency to believe that if he did it before, he probably did it again." (Internal quotation marks omitted.) Id., 73. In the present case, the degree of potential prejudice to the defendant was minimized by the fact that his prior conviction for escape differed significantly from the crime charged. See *State* v. *Irving*, 27 Conn. App. 279, 290, 606 A.2d 17 (because prior conviction dissimilar to offense charged, prejudice to defendant not great), cert. denied, 222 Conn. 907, 608 A.2d 694 (1992); cf. *State* v. *Wright*,

198 Conn. 273, 279, 502 A.2d 911 (1986) ("[w]here the prior crime is quite similar to the offense being tried, a high degree of prejudice is created"). That difference limited the risk that the jury would improperly infer a propensity to commit the crime of possession of narcotics with intent to sell on the basis of the prior conviction for escape. Notwithstanding the lack of similarity between the two crimes, the defendant argues that because the state presented evidence that he fled the crime scene, the mere mention of the prior escape conviction was enough to cause unacceptable prejudice. "The trial court, because of its intimate familiarity with the case, is in the best position to weigh the relative merits and dangers of any proffered evidence." (Internal quotation marks omitted.) *State* v. *Irving*, supra, 290. Here, the record reveals that the court carefully weighed the probative value of admitting into evidence the defendant's prior felony convictions against their prejudicial effect.[9]

The court based its decision with respect to the admission of the escape conviction on the fact that "[t]he defendant is not accused of escape, nor is he accused of anything similar to escape." Moreover, in denying the defendant's motion for a new trial, the court stated that "consciousness of guilt and flight also provide an opportunity to explain and, as I recall, your client took the [witness] stand, so he had opportunity to explain. So, any alleged prejudicial effect would be obviated by the fact that the defendant had an opportunity to explain why he was doing what he was doing." The court further reduced the risk of prejudice by cautioning the jury to consider the defendant's prior convic-

---

[9] For instance, the court ruled that the defendant's prior drug related convictions could be admitted only as unspecified felonies because they were similar to the charged offenses and, therefore, very prejudicial. The court also ruled that the violent nature of the defendant's prior assault and robbery convictions made them very prejudicial, and, therefore, they could only be admitted as unspecified felonies.

tions only in assessing the credibility of the defendant. See *State* v. *Sauris*, 227 Conn. 389, 403, 631 A.2d 238 (1993) ("[j]urors are presumed to have followed the instructions of the court as to the law in the absence of a clear indication to the contrary").

As to the second criterion, a felony conviction for escape falls within the category of crimes "that do not reflect directly on the credibility of one who has been convicted of them . . . and imply a general disposition toward dishonesty . . . . While not as probative of credibility, [an escape] conviction demonstrates a bad general character, .a general readiness to do evil and . . . such a disposition alone supports an inference of a readiness to [prevaricate] in [this] particular case . . . . Furthermore, while crimes such as [escape] convictions are less probative of credibility than those such as perjury or fraud, we have noted the legislative judgment that records of [all] crimes involving sentences of more than one year affect the credibility of a witness . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, supra, 221 Conn. 74.

As to the third criterion, regarding the remoteness in time of the prior conviction, at the time of the trial, the defendant's escape conviction was less than six years old. Therefore, the fact that the escape conviction was relatively recent further contributed to the probative value of the evidence. See *State* v. *Crumpton*, 202 Conn. 224, 229–30, 520 A.2d 226 (1987).

In addition to those factors, "[w]hen a case [would be] narrowed to the [issue of] credibility of [witnesses] . . . in those circumstances there [is] greater, not less, compelling reason for exploring all avenues which would shed light on which of the . . . witnesses [is] to be believed." (Internal quotation marks omitted.) *State* v. *Askew*, 245 Conn. 351, 369, 716 A.2d 36 (1998). In the present case, the jury's determination of the

defendant's guilt or innocence depended primarily on the comparative credibility of the various witnesses who testified at trial and, therefore, the probative value of the defendant's escape conviction was enhanced.

In light of all those considerations, we are persuaded that in the particular circumstances of this case, the probative value of the defendant's escape conviction outweighed any minimal prejudice that its admission might have engendered. Accordingly, we conclude that the court's admission of the escape conviction was not an unreasonable exercise of its discretion.[10]

### III

Last, the defendant claims that the prosecutor made improper arguments to the jury that violated the defendant's federal and state constitutional rights to a fair trial. Specifically, the defendant argues that, during his closing and rebuttal arguments, the prosecutor improperly (1) created the impression that the defendant had the burden of proving his innocence, (2) expressed his personal opinion regarding the credibility of witnesses

[10] Even if we assume arguendo that the court improperly admitted into evidence the nature of his prior felony conviction for escape, such error, in the context of the entire evidence, was harmless. Because the court's ruling was evidentiary and not constitutional in nature, the defendant bears the burden of demonstrating harm. See *State* v. *Grenier*, 257 Conn. 797, 806–807, 778 A.2d 159 (2001). "The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911 (1997). The defendant has failed to satisfy his burden of demonstrating harm.

First, the two references to the defendant's escape conviction made by the state were extremely brief. Second, the state did not attempt to draw any comparison between the defendant's prior escape conviction and his fleeing the scene of the crime in this case. Finally, the court specifically instructed the jury to consider the defendant's prior convictions only in assessing the credibility of the defendant. For all those reasons, we cannot conclude that the result of the defendant's trial would have been different absent the admission into evidence of his prior conviction for escape. Accordingly, the admission of his escape conviction was harmless.

and (3) referred to facts not in evidence. Although the defendant concedes that he failed to preserve those claims at trial, he nonetheless maintains that they are reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 4.

We review the defendant's claims because the record is adequate to do so and an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. We conclude, however, that the challenged comments did not deprive the defendant of a fair trial and, therefore, those claims fail under the third prong of *Golding*.

Prosecutorial misconduct can occur in the course of closing argument. *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). Our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial is well established. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Moreover, "[w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000).

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 297–98, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). With those principles in mind, we review the defendant's various claims of prosecutorial impropriety.

## A

The defendant first claims that the prosecutor improperly made comments that created the impression that the defendant had the burden of proving his innocence. We are not persuaded.

At trial, Grieco and DePietro testified extensively, detailing the events surrounding the defendant's arrest. In defense, the defendant presented witness testimony that, he argues, contradicted the testimony of Grieco and DePietro, and supported his contention that his arrest was the result of misidentification and police

harassment. During his closing argument and rebuttal, the prosecutor argued that the evidence that the defendant presented was inadequate to contradict the testimony of the officers and to support the defendant's defense theory. Specifically, the prosecutor commented on the defendant's failure to provide police records to support his contention that Grieco and DePietro were driving separate patrol cars at the time of the defendant's arrest. He also commented on the defendant's failure to provide photographs of the crime scene to rebut the officers' testimony that they parked their patrol car near the administration building and walked to a vantage point where they observed the defendant make a narcotics transaction.[11] The defendant takes issue with those comments, claiming that they deprived him of a fair trial.

---

[11] During his closing and rebuttal arguments, the prosecutor commented in relevant part as follows: "Now, defense counsel did ask, what building you were at, gave him maps, draw where you were. Why didn't defense counsel bring in the pictures, photos, of building fifteen, the administration building. Why wouldn't he do that? What was he afraid of? The state had no reason to do it. I brought the officers in; I put the officers on the [witness] stand. . . .

"Now, you wonder why defense counsel never brought in any records, anything from the police department to show that these two officers were in separate squad cars. He has every ability to do that. He had every opportunity to get any police officer he wanted in here to testify that these officers . . . were not in the same police car. Why didn't he?

"I brought the shift commander—once I found out that the question was, were they in the same police car, I brought the officer back and I brought the shift commander. . . . Standard operating procedure: Blue-14, high priority car. Never single—always double.
\* \* \*

"Why didn't defense counsel bring in photos of building eight, the administration building, building fifteen, and say, 'You could not have seen what you saw or wrote in your report from the location you indicated?' Why didn't he do that? An attorney will not ask a question he doesn't know an answer to for fear that the answer is going to come back and bite him.
\* \* \*

"He could have brought—see, on rebuttal, I brought in the lieutenant. I brought in the shift commander for the west side. He could have asked him anything he wanted about Blue-14, the two man sector car. I don't know what's coming up. Why should I have him bring in any paperwork? I don't

"The prosecutor is not precluded in argument from commenting on the strength of [the state's] case or the weakness of the defense case . . . [and] is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case . . . as well as his failure to support his own factual theories with witnesses." (Internal quotation marks omitted.) *State* v. *Washington*, 28 Conn. App. 369, 377, 610 A.2d 1332, cert. denied, 223 Conn. 926, 614 A.2d 829 (1992). Moreover, in doing so, the prosecutor in no way deprives the defendant of a fair trial. See *State* v. *Sinclair*, 20 Conn. App. 586, 595, 569 A.2d 551 (1990).

In the present case, the prosecutor's arguments represented reasonable comments on the weaknesses in the defendant's case, including the defendant's failure to contradict adequately the state's evidence and to support his own factual theories. See *State* v. *Perry*, supra, 58 Conn. App. 71. Although the defendant characterizes the prosecutor's isolated comments as having improperly shifted the burden of proof to the defendant, the court gave the jury thorough instructions on the proper burden of proof and the presumption of innocence, and there is no indication in the record that the jury did not follow the court's instructions.[12] We conclude that

know. Let him ask the questions, and he did. I brought him in. Why didn't counsel subpoena any of the records? Why didn't counsel subpoena the records—the officers on the shift, who . . . responded to that call?"

[12] With respect to the burden of proof and presumption of innocence, the court instructed the jury in relevant part as follows: "The defendant is innocent of the crime here charged unless and until the evidence produced before you here in court satisfies you of his guilt beyond a reasonable doubt. The accused does not have to prove that he did not commit the offense with . . . which he has been charged. The burden of proof remains with the state, and the state must prove that he did commit the offense, and in order to prove that . . . it must prove every essential element of the offense charged.

\* \* \*

"Remember, you must be satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime or you must find him not guilty.

"In this case, as in all criminal prosecutions, the defendant is presumed

the prosecutor's comments did not shift the burden of proof to the defendant or deprive the defendant of a fair trial, and, therefore, his claim fails under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

## B

The defendant next claims that the prosecutor improperly expressed his personal opinion regarding the credibility of witnesses during his closing and rebuttal arguments.[13] That claim is without merit.

to be innocent until proven guilty beyond a reasonable doubt. This presumption of innocence was with the defendant when he was first presented for trial in this case. It continues with him throughout the trial unless and until such time as all evidence produced here in the orderly conduct of the case, considered in the light of these instructions of law and deliberated upon by you in the jury room, satisfies you beyond a reasonable doubt that he is guilty.

"The burden to prove the defendant guilty of the crimes with which he is charged is upon the state. The defendant does not have to prove his innocence.

"This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. Whether the burden of proof rested upon the state is sustained depends not on the number of witnesses, nor on the quantity of the testimony, but on the nature and quality of the testimony."

[13] The defendant claims that the following portions of the prosecutor's closing and rebuttal arguments were improper: "Now, what are the officers going to gain? There's a lot of arrests since this one. Is this anything special? What does the defendant stand to gain?

\* \* \*

"In totality, who can you believe? And that's what this case comes down to—because everything else has been proven or is undisputed—is who to believe? The two cops . . . who have a total at that time of eight months on the job, with seven months prior to that in the academy, or the defendant and the people he brought in to support his position? . . . What is more reasonable?

"If the officers wanted to change their stories, if the officers wanted to change the location, why didn't they do so? Why would they write a report like that, say it was at a different building, say they weren't standing . . . where they were? Why would they give you information or make a completely different story up? Why didn't they just say, 'Hey, we went there, we found it on the stairs, we chased the guy, and we found it under this stairwell instead of that stairwell?

"[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence. . . . In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue that one of the two sides is lying. . . . While the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Moore*, 49 Conn. App. 13, 28, 713 A.2d 859 (1998).

"They didn't do that, and they never changed from their story. . . .

"It is who you believe. Credibility. And [defense counsel], when he picked and spoke to each and every one of you, said, 'You understand that officers may have something to gain by an arrest?' Do you recall that question? Does the defendant stand to gain anything through this case? Who has more to gain? The officers are going to be cops tomorrow. They will be making arrests tomorrow. Who do you believe?

\* \* \*

"Is it reasonable that [defense counsel's] firm would allow that report to exist if it was false? Do you think that there would not be a lawsuit if that report was false? . . .

"Defense counsel is asking you to make logical, reasonable assumptions. Don't leave your common sense outside the door. . . . They gave what they did on that day. Now, is it reasonable that they did a report after the arrest? Well, think about it. I'd be prosecuting them if this report was generated prior to arrest. . . .

"If you believe defense counsel's argument or believe in defense counsel's witnesses, wouldn't they have written a better report? What reason—what godly reason would they have to falsify a report and say, 'Somebody—let's pick any of you—sold the narcotics?' Why? Why would they do—two young officers, out there as we pay them to do.

"Now, ladies and gentlemen, we teach them in the academy . . . to protect themselves and the community. Do they care where the card table was? No. Do they care that there's anybody around them? No. They're watching the guy who's committing the felony and where he's going."

In the present case, the prosecutor did not, as the defendant contends, vouch personally for the truth and veracity of the state's witnesses. Instead, the prosecutor's comments on the credibility of the witnesses properly suggested reasonable inferences from evidence adduced at trial. In light of the defendant's relatively lengthy attack on the credibility of the state's witnesses,[14] "it was appropriate for the [prosecutor] to present the jury with an alternative to the defendant's suggestion that the witnesses must be lying . . . [and] [i]n no way did these comments infringe upon the jury's fact-finding function." (Citation omitted.) *State* v. *Burton*, supra, 258 Conn. 169–70.

It also was entirely appropriate for the prosecutor, when discussing the issue of credibility, to identify the interests of the various witnesses in the outcome of the trial. See id., 170 (state may properly argue witnesses

---

[14] During closing argument, the defendant's counsel argued in relevant part as follows: "Well, guess what? If you make hundreds of drug arrests and you file a false report, that's going to be your memory eight months later. . . . [I]f it was false at the time, it's going to be false now because you're going to read it, you're going to swear to it. . . .

"Remember, the report is written after the fact. You got the drugs, you made the arrest, you better justify that arrest. Keep that in mind. . . .

"Does this happen? I mean, do reports get generated that are . . . not in fact what happened? Well, if you believe some of the witnesses up there on the [witness] stand, it happens often enough that when a patrol car or a uniformed police officer pulls into a housing project, people meander away because they're not going to be there when the drugs get found and, 'Hey, listen, you're it, you're up this time.' . . .

"[Y]ou're either going to believe the officers' version of the story or you're going to believe the defense version of the story.
* * *
"Remember, [the prosecutor] said . . . we agree that . . . my client . . . matches the description in the police report. Well, when was that description generated? After they had him in custody. It would be pretty difficult not to be able to get a good description of him after they got him in custody.
* * *
"[T]he report is a load of hooey. And I think if you look at the evidence that was introduced in the case, I think it becomes more and more obvious the more and more you look at the report."

had no apparent motive to lie). It is well established that jurors may consider a witness' interest in the outcome of the trial when assessing the credibility of the witness. See *State* v. *Scarpiello*, 40 Conn. App. 189, 213, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

Furthermore, even if we were to conclude that the challenged comments were improper, those comments were not sufficiently egregious to infect the whole trial. See *State* v. *Chasse*, supra, 51 Conn. App. 355 (fairness of trial, not culpability of prosecutor is standard for analyzing prosecutorial misconduct claims). That is especially true in light of the fact that the court specifically instructed the jury with respect to its proper role in determining the credibility of witnesses.[15] See *State* v. *Sauris*, supra, 227 Conn. 403. Accordingly, we conclude that the defendant's claim also fails under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

C

Finally, the defendant claims that the prosecutor denied him the right to a fair trial by improperly referring to facts not in evidence and manipulating the jurors by diverting their attention with unsubstantiated speculation. Again, we disagree.

---

[15] The court instructed the jury in relevant part as follows: "The credibility, the believability of any witness and the weight to be given to their testimony are matters entirely within your hands. It is for you alone to determine their credibility. Whether or not you find a fact proven is not to be determined by the number of witnesses testifying for or against a certain proposition. It is the quality, not the quantity, of testimony which should be controlling. Nor is it necessarily so that because a witness testifies to a fact and no one contradicts it you are bound to accept that fact as true.

"The credibility of the witness and the truth of the fact is for you to determine. In weighing the testimony of the witnesses, you should consider the probability or the impropriety of their testimony. You should consider their appearance, conduct and demeanor while testifying in court and any interest, bias, prejudice or sympathy which a witness may apparently have for or against the state or the accused in the outcome of the trial."

"[I]n fulfilling his duties, the prosecutor must confine the arguments to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 263, 780 A.2d 53 (2001).

At trial, Debbie Bowens testified for the defendant. On cross-examination, Bowens acknowledged that she had a 1989 narcotics conviction. During his closing argument, the prosecutor commented on Bowens' testimony as follows: "So, who does defense counsel bring in? Miss Bowens, Debbie Bowens. She couldn't remember her own record. How many times she was arrested—convicted of a crime. . . . A drug user testifying for a drug seller."

The defendant argues that because the record did not indicate whether Bowens' narcotic conviction was for drug use, the prosecutor's comments referred to evidence not in the record. We agree with the defendant that it was improper for the prosecutor to refer to Bowens specifically as a drug user; however, the prosecutor's comment was harmless and in no way infringed on the defendant's right to a fair trial. "Although certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process." *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990).

The defendant also argues that the prosecutor, by referring to the defendant as a drug seller, impermissibly expressed his personal opinion regarding the defendant's guilt. "We acknowledge that it is improper for a prosecutor to express his or her opinion, directly or indirectly, as to a defendant's guilt." *State* v. *Moore*, 65 Conn. App. 717, 724, 783 A.2d 1100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001). We also recognize, how-

ever, that advocates must be allowed latitude in argument to accommodate for the zeal of counsel in the heat of argument. *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 399–400, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). Viewed in the context of the entire trial, the prosecutor's isolated comment was not blatantly egregious and did not deprive the defendant of a fair trial.

The defendant's final argument is that the prosecutor's use of the word "associates" in reference to a number of the witnesses that testified for the defendant was improper because it implied the existence of a drug related relationship between the defendant and those witnesses that was not supported by the evidence.

During the state's cross-examination of the defendant, the prosecutor questioned him about how well he knew a number of the defense witnesses. The defendant responded that he knew Gerald Williams "fairly," Eleanor Cook "for a couple of years" and Derrick Slade "practically all his life." The prosecutor then asked the defendant whether they were his close friends, to which the defendant responded that they were "[a]ssociates." Subsequently, during his closing argument, the prosecutor made the following remark: "What do the defendant's, quote, associates know—that's another thing. Associates. I think he termed it better than I could have. They're my associates. You've got the defendant selling drugs—his associates."[16] On rebuttal the prosecutor further commented: "He is not the friend of them. He's the associate. Because I asked him: Are they friends of yours? They're associates. I wonder if it's in a business sense that they're associates." The defendant did not object to those comments.

[16] On rebuttal, the prosecutor also commented: "[T]he defendant spent time in the projects; who do you spend time with when you go out? I spend it with my friends, not my associates. There's a difference—friends and associates. When I'm spending leisure time, it's with my friends or family."

The defendant, having chosen to characterize the defense witnesses as being his associates, cannot now complain because the prosecutor commented on his word choice and argued the reasonable inferences that the jurors might draw therefrom. Furthermore, even if we were to conclude that the challenged comments were improper, those isolated comments were not sufficiently egregious to infect the whole trial. See *State* v. *Chasse*, supra, 51 Conn. App. 355. We therefore are not persuaded that those comments deprived the defendant of his constitutional right to a fair trial.

We conclude that because most of the challenged comments were appropriate and that any improper comments, taken as a whole, were not sufficiently pervasive to have established a pattern of misconduct or so blatantly egregious that they infringed on the defendant's right to a fair trial, the cumulative effect of the challenged comments did not clearly deprive the defendant of a fair trial. Accordingly, the defendant's claims of prosecutorial misconduct fail under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.