STATE OF CONNECTICUT *v.* WILLIE BROWN
(AC 29141)

Gruendel, Harper and Pellegrino, Js.

Argued February 18—officially released April 14, 2009

*Laljeebhai R. Patel*, special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert J. O'Brien*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Willie Brown, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a) (1). He claims that (1) the evidence was insufficient to sustain a conviction as to either crime and (2) the court abused its discretion in denying his motion to suppress evidence of his pretrial identification. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, William Willis, owned a scrap metal shop (scrap yard) located at 569 North Colony Street in Meriden. Due to the nature of his business, the victim

regularly kept a substantial sum of money in a ziplock bag that he tucked in his waistband. In addition, he kept a second ziplock bag containing medication in his waistband. On February 22, 2006, he was sixty-eight years old.

At approximately 7 o'clock that morning, the victim noticed the defendant entering the scrap yard. After the victim inquired as to whether he could be of any assistance, the defendant forced him to the ground. The defendant repeatedly ordered the victim to "give me your money" and brandished a knife of roughly six inches, which he held to the victim's face. As the two struggled on the ground, the victim yelled to a nearby employee, Gary Kafka, for help. The defendant forced the victim onto his back and reached for his waistband, retrieving both ziplock bags. When Kafka came running to the scene, the defendant turned his knife in Kafka's direction and cautioned, "Get away from me or I'll fucking cut you." Kafka backed away and ran into the street, where he stopped a passing motorist, Randy Cousino. When Cousino looked to the scrap yard, he saw the defendant "using a lot of energy, like he was beating on someone." As he exited his vehicle, Cousino saw two men, Michael Dionizio and Incensio Ramos, run out of a neighboring deli. As the men together ran toward the scrap yard, the defendant fled. They chased the defendant along North Colony Street to its intersection with Griswold Street without losing sight of him. As they passed the victim, the victim exclaimed, "Stop him, he's got my money!" Upon reaching the intersection, Ramos, a retired firefighter, displayed his retirement badge and ordered the defendant to the ground. After detaining the defendant, Dionizio called 911. While waiting for law enforcement to arrive, Dionizio noticed a ziplock bag in the defendant's pocket. He retrieved it and observed that the bag contained the victim's

medication. At that time, Kafka arrived at the scene and recognized the detainee as the victim's attacker.

Officer Esteven Lespier of the Meriden police department arrived approximately five minutes later. As Lespier placed the defendant in handcuffs, Kafka informed him that the defendant had assaulted the victim. Soon thereafter, the bloodied victim came walking along the street. The victim immediately recognized the defendant as his attacker and provided that identification to Lespier.

The defendant subsequently was charged with and convicted of larceny in the second degree and assault of an elderly person in the third degree.[1] The court thereafter sentenced the defendant to a total effective term of ten years incarceration. This appeal followed.

I

The defendant first alleges evidential insufficiency. Specifically, he claims that the evidence concerning the identity of the perpetrator was insufficient to establish his participation in the charged crimes. We do not agree.

The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [finder of fact] if there is sufficient evidence to support [its] verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001). "[T]he issue of the identification of the

---

[1] The jury found the defendant not guilty of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).

defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 256, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 403, 902 A.2d 1044 (2006).

The defendant's claim exhibits a fundamental misunderstanding of that standard. In the present case, the jury heard testimony from multiple witnesses that the defendant was the victim's assailant.[2] The victim, Kafka and Cousino all so testified on the basis of their firsthand observation.[3] As the sole arbiter of the credibility of witnesses, the jury was free to believe that testimony. See *State* v. *Smith*, 99 Conn. App. 116, 136, 912 A.2d 1080, cert. denied, 281 Conn. 917, 917 A.2d 1000 (2007). Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded beyond a reasonable doubt that the defendant perpetrated the crimes of February 22, 2006.

II

The defendant next contends that the court abused its discretion in denying his motion to suppress evidence of his pretrial identification by the victim. "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged

---

[2] The defendant does not acknowledge that testimony in his appellate brief.

[3] In addition, the jury was presented with evidence of the victim's February 22, 2006 identification of the defendant as his assailant. Lespier testified that when the victim arrived at the intersection of North Colony Street and Griswold Street, he indicated that the defendant "was the person that assaulted him."

to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . [T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . . Furthermore, [w]e will reverse the trial court's ruling [on evidence] only where there is an abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of fact-bound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Citation omitted; internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 547–48, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

The defendant's claim is controlled by *Ledbetter* and *State* v. *Wooten*, 227 Conn. 677, 631 A.2d 271 (1993). In *Wooten*, our Supreme Court held that, although suggestive, the "one-to-one show-up or confrontation" on the scene between the victim and the defendant "was nonetheless not *unnecessarily* [suggestive] because the exigencies of the situation justified the procedure . . . . The confrontation was not unnecessary because it was prudent for the police to provide the victim with the

opportunity to identify her assailant while her memory of the incident was still fresh . . . and because it was necessary to allow the police to eliminate quickly any innocent parties so as to continue the investigation with a minimum of delay, if the victim excluded the defendant as a suspect or was unable to identify him." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 686. The court in the present case expressly relied on that precedent in determining that the victim's February 22, 2006 identification of the defendant as his assailant was not unnecessarily suggestive. On our careful examination of the record, we agree. The court did not abuse its discretion in denying the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.